IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of | ) | No. 39174-4-III |
| | ) | |
| | ) | |
| R.D.[†] | ) | |
| | ) | UNPUBLISHED OPINION |
| Minor Child. | ) | |
| | ) | |

LAWRENCE-BERREY, C.J. — R.D.'s paternal grandmother raised R.D. from the

time he was two months old until he was five years old. When he was five, the

grandmother and R.D.'s biological parents entered into an agreed limited guardianship

order. The order appointed the grandmother as R.D.'s guardian, gave her custody and

care of R.D. during the school years, and gave his biological parents care of R.D. during

the summers.

---

[†] To protect the privacy interests of the minor child, we use their initials throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts. wa.gov/appellate_trial_courts.

At the end of the first summer, R.D.'s parents petitioned to terminate the guardianship, averring that they had been clean and sober for years, and that R.D. had integrated into their family. The grandmother responded that it would not be in R.D.'s best interest to place him with parents who he only recently met, and she requested an evidentiary hearing. The trial court denied the grandmother's request for an evidentiary hearing and terminated the guardianship.

We conclude that substantial evidence does not support termination of the guardianship, reverse the trial court's order, and remand for an evidentiary hearing.

FACTS

In March 2022, R.D.'s paternal grandmother filed a petition for guardianship over R.D. The petition indicated that neither R.D.'s biological mother nor biological father were willing or able to support or care for R.D. The grandmother filed a declaration with the petition asserting that both biological parents suffered from substance abuse and addiction issues, and that R.D.'s mother had pleaded guilty to a federal drug charge and she still was on probation. The grandmother noted that R.D. had been in her care since he was two months old and that neither parent had seen R.D. since 2017.

In May 2022, the trial court entered an agreed order for a limited minor guardianship.[1]  The court's written order indicates that the parties consented to the limited minor guardianship "so as to have [R.D.] reintegrated with [his parents]." Clerk's Papers (CP) at 40.  The court did not order limits on the parents and granted the parties the right to decision making when they had custody of R.D.  The order required the court clerk to issue letters of guardianship to the grandmother, valid until R.D. turned 18.

The order set forth a visitation schedule that gave the parents increased time with R.D. over the first week of visits, authorized the parents to take R.D. to their home in Montana for nine days during which time his grandmother would also stay with the parents, and ordered R.D. to remain with the parents from the end of May 2022 until September 5, 2022, without any supervision requirements.  In the years after 2022, R.D. would reside with his grandmother during the school years and with his parents every summer.

---

[1] Prior to this litigation, the grandmother had filed for and obtained nonparent custody of R.D. in a 2017 third party custody case.  In 2021, R.D.'s grandmother filed an action to have herself declared R.D.'s de facto parent.  Both actions, apparently, were dismissed following entry of this limited minor guardianship.  The pleadings in those earlier matters are not part of our record.

3

In August 2022, the parents filed a petition to terminate the guardianship. In declarations accompanying their petition, the parents claimed they had been clean and sober for a number of years and that they had gotten their lives back together. They also claimed that R.D., who had lived with them for approximately three months, had integrated into their family, and therefore the basis for the limited guardianship no longer existed.[2]

The grandmother submitted a declaration opposing the petition to terminate the guardianship. She stated she agreed to terminate the de facto parentage action in return for assurances that the guardianship would last until R.D. was 18, R.D. was bonded to her because she had raised him for nearly his entire life, his parents would not allow her to talk to him on the phone throughout the summer, and removing R.D. from her care and custody would be harmful to him. She argued an evidentiary hearing was required, and that the parents had failed to address the relevant statutory factors set forth in RCW 11.130.240(1)(b)(i) and (ii).

---

[2] The 2018 federal criminal indictment against R.D.'s mother accused her of knowingly conspiring with others to possess with intent to distribute 50 or more grams of methamphetamine and 100 or more grams of a substance containing heroin. In February 2020, the mother pleaded guilty to possession of methamphetamine with intent to distribute. If the mother was on probation and subject to drug and alcohol testing, she would have test results to support her assertion that she was clean and sober for a number of years.

No. 39174-4-III
*In re Guardianship of R.D.*

The trial court did not hold an evidentiary hearing, but rather considered arguments of counsel. After arguments, the court ruled:

> Motion granted. I am convinced by clear, cogent and convincing evidence, together with the presumption of the parents' rights in this child, together with the current guardian's lack of any legal progress in the guardianship case or the third party custody case for many years. I think it is time for this child to be returned home.

Rep. of Proc. (Aug. 29, 2022) at 15.

The written order states that the trial court terminated the limited guardianship "because the reason the order was approved is no longer true." CP at 185. In addition, the order noted the presumption of the parents' right to parent their children and the lack of progress with respect to the limited guardianship case and the nonparental custody action.

The grandmother timely appealed.

ANALYSIS

The grandmother argues that substantial evidence does not support termination of the guardianship. We agree.

This case involves Washington's recently enacted guardianship statutes. Effective January 2021, the legislature passed the Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act (the Act), chapter 11.130 RCW. LAWS OF 2019, ch. 437. The Act overhauled the statutory framework for guardianships in Washington.

5

As part of the Act, the legislature enacted RCW 11.130.185, which provides trial courts with authority to appoint a guardian for a minor and sets forth the requirements to make such an appointment:

(1)     A person becomes a guardian for a minor only on appointment by the court.
        (2)  The court may appoint a guardian for a minor who does not have a guardian if the court finds the appointment is in the minor's best interest and:
        (a)  Each parent of the minor, after being fully informed of the nature and consequences of guardianship, consents;
        (b)  All parental rights have been terminated; or
        (c)  There is clear and convincing evidence that no parent of the minor is willing or able to exercise parenting functions as defined in RCW 26.09.004.

Here, the trial court appointed the grandmother to be R.D.'s limited guardian pursuant to RCW 11.130.185(2)(a), based on its findings that (1) the guardianship was in R.D.'s best interest and (2) because both parents consented.

A guardianship for a minor may be terminated under RCW 11.130.240, which provides in relevant part:

(1)     Guardianship under this chapter for a minor terminates:
        . . . .
        (b)  When the court finds that the basis in RCW 11.130.185 for appointment of a guardian no longer exists, unless the court finds that:
        (i)  Termination of the guardianship would be harmful to the minor; and
        (ii)  The minor's interest in the continuation of the guardianship outweighs the interest of any parent of the minor in restoration of the parent's right to make decisions for the minor.

Here, a basis for appointing the guardianship was because it was in R.D.'s best interest. As discussed below, the parents' unsubstantiated assertions of being clean and sober and R.D.'s integration into their family are insufficient, without an evidentiary hearing, to support termination of the guardianship.

The grandmother raised R.D. nearly his entire life and agreed to a limited guardianship in which she was the guardian and had custody and care of R.D. throughout the school year, but allowed R.D.'s parents to have custody of him during the summers.

During the first summer, the parents refused telephonic contact between the grandmother and R.D. despite the fact that she was the only parental figure R.D. had ever known. Having spent only three months with five-year-old R.D., the parents moved to terminate the guardianship, asserting they had been clean and sober for years and that R.D. had successfully integrated into their family. These assertions were not subject to cross-examination nor were they verified by any objective evidence.

In *Acosta v. City of Mabton*, 2 Wn. App. 2d 131, 408 P.3d 1095 (2018), we discussed when courts may summarily rule in favor of a party or when courts should allow the matter to proceed to trial. There, we noted that sometimes a material "fact" is particularly within the knowledge of the moving party and the nonmoving party cannot directly contradict it. *Id.* at 138. In those situations, we advised that "where a proponent's 'fact' reasonably might be disbelieved, 'it is advisable that the cause proceed

7

to trial in order that the opponent . . . be allowed to disprove such fact[ ] by cross-examination and by the demeanor of the [witness] while testifying.'" *Id.* (internal quotation marks omitted) (alterations in original) (quoting *Brown v. Brown*, 157 Wn. App. 803, 820, 239 P.3d 602 (2010)). The same concept applies to granting or denying a party's request for an evidentiary hearing.

Here, whether the parents had been clean and sober for years and whether R.D. had integrated into the family in three months were "facts" particularly within the knowledge of the parents, "facts" that the grandmother could not directly contradict. Moreover, one might reasonably disbelieve the mother's declaration. She had recently been convicted of possession with intent to distribute methamphetamine and failed to submit objective evidence that she was clean and sober. We conclude the trial court erred by accepting the parents' declarations at face value rather than granting the grandmother's request for an evidentiary hearing. Under these circumstances, the parents' declarations do not constitute substantial evidence to support a finding that terminating the guardianship was in R.D.'s best interest.

No. 39174-4-III
*In re Guardianship of R.D.*

We reverse the trial court's order and remand for the trial court to hold an evidentiary hearing. The safety of a young child warrants no less.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____     _____
Fearing, J.                          Pennell, J.